Cheshire
No. 2008-712

IN THE MATTER OF KATHALEEN A. DUFTON AND TERRY L. SHEPARD, JR.

Argued: May 5, 2009
Opinion Issued: June 3, 2009

*Nadeau Law Offices, PLLC*, of Portsmouth (*Justin P. Nadeau* on the brief and orally), for the grandmother.

*Bradley & Faulkner, P.C.*, of Keene (*Douglas F. Green* and *Susan R. Abert* on the brief, and *Ms. Abert* orally), for the father.

DALIANIS, J. The grandmother, Kathaleen A. Dufton (grandmother), appeals the order recommended by a Marital Master (*Forrest*, M.) and approved by the Superior Court (*Arnold*, J.), dismissing her petition for grandparent visitation. *See* RSA 461-A:13 (Supp. 2008). We reverse and remand.

The grandmother alleges or the record supports the following facts. The grandmother is the biological mother of Vicki Shepard, who is the now deceased wife of the respondent, Terry L. Shepard, Jr. (father), and the mother of the minor grandchildren. The grandmother was sixteen years old when she gave birth and relinquished her parental rights to her daughter. The daughter was later adopted.

The grandmother and her daughter reunited when the daughter was twenty-six, and, for the next thirteen years, until the daughter's untimely death from cancer, they were very close. They vacationed and spent holidays together and visited every other weekend. The grandmother helped her daughter through her pregnancies and attended the birth of her two granddaughters. The grandmother celebrated all special occasions with her daughter and granddaughters, including the children's baptisms and birthdays. When the grandmother's daughter fell ill with cancer, the grandmother stayed with her at the hospital and accompanied her to all of her doctor visits. When the grandmother's daughter died in March 2005, the grandmother was at her bedside.

For several months after his wife's death, the father would not allow the grandmother to visit with her grandchildren. Then, in November 2005, he allowed the grandmother to visit with her granddaughters every other weekend, during school vacation weeks, and over the summer. In the summer of 2007, the children were with the grandmother for six weeks.

At some point thereafter, the father again denied the grandmother visitation with the children, prompting her to file the instant petition. The father moved to dismiss on the grounds that because the grandmother had

relinquished her parental rights to her daughter, she was not a "grandparent" of her daughter's children and, therefore, lacked standing to petition for grandparent visitation.

Initially, the trial court denied the father's motion. The trial court reasoned that the grandmother had standing to seek visitation because she is the biological grandmother of the children and the grandparent visitation statute applies to both adoptive and natural grandparents. *See* RSA 461-A:13, I. The court ruled that the plain meaning of the word "natural" is "biological." Accordingly, as the children's natural grandmother, the grandmother had standing to seek visitation.

The father moved for reconsideration, arguing that: (1) the grandmother is not a natural grandmother because she was not the legal parent of the children's mother; and (2) it would violate his substantive due process rights to allow the grandmother, whom the father characterized as "an unrelated third party," to petition for visitation. *See Troxel v. Granville*, 530 U.S. 57, 66-67 (2000) (plurality holding that visitation statute allowing *any* third party to seek visitation is "breathtakingly broad," and, as applied, unconstitutionally infringed upon parent's fundamental right to make decisions regarding care, custody and control of child); *In the Matter of Nelson & Horsley*, 149 N.H. 545, 548 (2003) ("Only in the most unusual and serious of cases may . . . fundamental rights [of the natural or adoptive parent over his children] be abrogated in favor of an unrelated third person."). The trial court granted the motion for reconsideration, ruling that the grandmother lacked "legal standing to pursue grandparent visitation," but stating that it was "deeply troubled that the [father] would deprive his children of a relationship with the [grandmother]." This appeal followed.

■ Usually, in ruling upon a motion to dismiss, the trial court is required to determine whether the allegations contained in a petitioner's pleadings are sufficient to state a basis upon which relief may be granted. *Ossipee Auto Parts v. Ossipee Planning Board*, 134 N.H. 401, 403 (1991). To make this determination, the court would normally accept all facts pled by a petitioner to be true and construe all reasonable inferences in the light most favorable to her. *In the Matter of Lemieux & Lemieux*, 157 N.H. 370, 372-73 (2008). When, however, the motion to dismiss does not contest the sufficiency of the petitioner's legal claim, but instead, as in the present case, challenges her standing to sue, the trial court must look beyond her unsubstantiated allegations and determine, based upon the facts, whether the petitioner has sufficiently demonstrated her right to claim relief. *Ossipee Auto Parts*, 134 N.H. at 404. Because the underlying facts are not

in dispute, we review the trial court's decision *de novo. Johnson v. Town of Wolfeboro Planning Bd.*, 157 N.H. 94, 96 (2008).

The sole issue for our review is whether the grandmother is a "grandmother" within the meaning of the grandparent visitation statute. The interpretation of a statute is a question of law, which we review *de novo. N.H. Dep't of Envtl. Servs. v. Marino*, 155 N.H. 709, 713 (2007). In matters of statutory interpretation, we are the final arbiter of the legislature's intent as expressed in the words of the statute considered as a whole. *In the Matter of Kenick & Bailey*, 156 N.H. 356, 358 (2007). We first examine the language of the statute and ascribe the plain and ordinary meanings to the words used. *Id.*

■ RSA 461-A:13, the grandparent visitation statute, provides, in pertinent part:

> I. Grandparents, whether adoptive or natural, may petition the court for reasonable rights of visitation with the minor child as provided in paragraph III. The provisions of this section shall not apply in cases where access by the grandparent or grandparents to the minor child has been restricted for any reason prior to or contemporaneous with the divorce, death, relinquishment or termination of parental rights, or other cause of the absence of a nuclear family.

This language is identical to the language of RSA 458:17-d, I (1992) (repealed 2005), the predecessor to RSA 461-A:13, I. We have previously interpreted this language to confer standing upon a grandparent, either natural or adoptive, "whenever a grandchild's nuclear family is the subject of divorce, death, relinquishment or termination of parental rights unless the grandparent's access to the grandchild has been earlier, or contemporaneously, restricted." *O'Brien v. O'Brien*, 141 N.H. 435, 437 (1996) (quotation omitted).

■ In *O'Brien*, we explained that grandparent visitation rights existed *only* in the absence of the grandchild's nuclear family. *Id.* We also explained that the reason for the absence of the nuclear family was not limited to "divorce, death, relinquishment or termination of parental rights," but included "other cause[s]." *Id.* (quotations omitted). Under our interpretation in *O'Brien*, therefore, a grandparent may petition for visitation *only* if the grandchild's nuclear family is absent for some reason, which includes, but is not limited to "divorce, death, relinquishment or termination of parental rights" and *only* if the grandparent's access to the grandchild has not been restricted for any reason before or contemporaneously with the event giving rise to the absence of a nuclear family. *Id.* (quotation omitted).

In this case, the grandchildren's nuclear family is absent because their mother, the grandmother's daughter, died. Thus, the grandmother is entitled to seek visitation provided that: (1) she is the children's adoptive or natural grandmother; and (2) her access to the children was not "restricted for any reason" before or contemporaneously with her daughter's death. RSA 461-A:13, I. Because it is the only issue on appeal, we confine our analysis to the first condition: whether the grandmother is the children's "natural" grandmother for the purposes of the grandparent visitation statute. We first look to the plain meaning of the word "natural," and agree with the grandmother that this word is synonymous with "biological."

■ A "natural" parent is a parent who has conceived or "begotten" a child, as opposed to a parent who has adopted the child. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1506 (unabridged ed. 2002); see BLACK'S LAW DICTIONARY 1054 (8th ed. 2004) ("natural" means "[o]f or relating to birth"; a "natural child" as distinguished from an "adopted child"). Because the grandmother gave birth to the children's mother, she is their "natural" grandmother within the meaning of the grandparent visitation statute. See WEBSTER'S THIRD NEW INTERNATIONAL DICTION-ARY, supra at 988 (defining "grandmother" as "the mother of one's father or mother").

The father argues that to the extent that we interpret the grandparent visitation statute to allow the grandmother to seek visitation, the statute conflicts with New Hampshire's adoption laws. We need not decide whether such a conflict exists, however, for even if it does, we hold that the grandparent visitation statute, which was first enacted in 1989, see Laws 1989, 314:2, and specifically addresses visitation by natural grandparents, controls.

■■ "When a conflict exists between two statutes, the later statute will control, especially when the later statute deals with a subject in a specific way and the earlier enactment treats that subject in a general fashion." Bel Air Assocs. v. N.H. Dep't of Health & Human Servs., 154 N.H. 228, 233 (2006) (quotation omitted). While generally, a natural parent has no parental rights to the child she relinquished, see RSA 170-B:11 (Supp. 2008), and, thus, for the purposes of adoption law, is not the grandmother of her child's children, she may be considered the natural grandmother of those children for the purposes of the grandparent visitation statute. By enacting the grandparent visitation statute, the legislature specifically gave natural grandmothers the right to seek visitation when the grandchild's nuclear family is absent for some reason and the grandmother's access to the grandchild has not been restricted for any reason before or contempo-raneously with the event that gave rise to the absence of a nuclear family.

*See* RSA 461-A:13, I; *O'Brien*, 141 N.H. at 437. This specific statute controls over the more general adoption laws. *See Sanborn Regional Sch. Dist. v. Budget Comm. of the Sanborn Regional Sch. Dist.*, 150 N.H. 241, 242 (2003).

The father next asserts that the grandmother is *not* the children's natural grandmother because her rights to them are only derivative of her parental rights to their mother. Having relinquished her parental rights to the children's mother when the mother was an infant, she has no familial relationship to the children.

We rejected a similar proposition in *Preston v. Mercieri*, 133 N.H. 36 (1990). In that case, the child's paternal grandmother moved to enforce a stipulation regarding visitation. *Preston*, 133 N.H. at 37-38. The grand-mother and child had lived together, with the child's father (the grand-mother's son), for four months before the father suddenly died. *Id.* at 37. After the father died, the child's mother refused to allow the grandmother to visit the child. *Id.* at 37-38. The grandmother filed a petition for visitation, which the trial court granted. *Id.* at 38. The mother appealed, and while the appeal was pending, the parties entered into a stipulation about visitation. *Id.*

In the meantime, the mother's new husband adopted the child. *Id.* The mother then took the position that the child's adoption by his stepfather rendered the grandmother an unrelated third party and negated her right to visitation. *Id.* The grandmother sought to enforce the stipulation. *Id.* The trial court ruled in her favor, and we affirmed. *Id.* at 37, 38.

Like the father in this case, the mother argued that New Hampshire's adoption statutes severed her child from his biological father's family tree, thus making the grandmother a stranger to the child and extinguishing her visitation rights. *Id.* at 39. We disagreed, in part, because of the difference between stepparent adoption of an older child and traditional infant adoption. *Id.* at 44-45. While in a traditional adoption, "where the child is an infant and emotional bonds have not yet formed with natural relations, there are policy reasons for secrecy which justify a shield of confidentiality ensuring anonymity and precluding post-adoption visitation," these policy justifications do not exist in the case of a stepparent adoption. *Id.* at 45. In a stepparent adoption of an older child, the child already has a substantial relationship with his grandparents, "and anonymity cannot be achieved because the child knows and remembers his grandparents and retains emotional ties with them after adoption." *Id.* In such a case, we observed, it would be "cruel and inhumane" to terminate the relationship between the child and his grandparents abruptly. *Id.*

■ For similar reasons, we reject the father's contention that the grandmother's right to seek visitation under the grandparent visitation statute is merely derivative of her parental rights to the children's mother. As in *Preston*, the policy justifications for requiring anonymity or preventing contact between the grandmother and the children of her now deceased daughter are not present. Here, the grandmother and her daughter reunited when the daughter was twenty-six, and had a loving, close relationship until the daughter died thirteen years later. While an adoption decree may serve to "sever[] the child from its own family tree and engraft[] it upon another, . . . such an analogy loses its rationale" when, as in this case, the adopted child has reached maturity and pursued a relationship with the mother who relinquished her. *Id.* (quotation omitted).

Moreover, as in *Preston*, anonymity cannot be achieved because of the existing relationship between the grandmother and her daughter's children. As in *Preston*, it would be "cruel and inhumane" to terminate that relationship merely because the grandmother relinquished her parental rights to the children's mother when the mother was an infant. *Id.* "In a situation such as the present one, where the child's natural parent has died suddenly, the love and commitment of grandparents can be a source of security which lessens the trauma occasioned by the parent's death." *Id.*

We conclude, therefore, that the fact that the grandmother relinquished her parental rights to the children's mother when the mother was an infant has no bearing, *per se*, upon her ability to seek visitation with the grandchildren now. *See id.* at 45-46. Because we hold that the grandmother's right to seek visitation with her grandchildren is not derivative of her parental rights to the children's mother, we necessarily reject the father's assertion that the grandmother is "judicially estopped from claiming legal rights derivative of parental rights that she has previously voluntarily surrend[er]ed in a previous adoption proceeding." (Emphasis omitted.)

■ We also necessarily reject his contention that to interpret the grandparent visitation statute to apply to the grandmother violates his substantive due process rights because it will allow an "unrelated third party" to seek visitation with his children. *See Troxel*, 530 U.S. at 66-67; *In the Matter of Nelson & Horsley*, 149 N.H. at 548. Having given birth to the children's mother, the grandmother is their natural grandmother for the purposes of the grandparent visitation statute, and, therefore, *is* related to them. As the father does not argue that it violates his substantive due process rights to allow a natural grandmother to petition for visitation, we leave this issue for another day.

For all of the above reasons, therefore, we conclude that the grandmother is the children's "natural" grandmother for the purposes of the grandparent visitation statute.

*Reversed and remanded.*

BRODERICK, C.J., and DUGGAN and HICKS, JJ., concurred.