Newport Family Division
No. 2009-829

IN THE MATTER OF TAMMY RUPA AND ALAN RUPA

Argued: September 15, 2010
Opinion Issued: December 22, 2010

*Barbara L. Parker*, of Newport, on the brief and orally, for the petitioner.

*Shanelaris & Schirch, PLLC*, of Nashua (*Jane M. Schirch* on the brief and orally), for the intervenors.

CONBOY, J. The petitioner, Tammy Rupa, appeals an order issued by the Newport Family Division (*Cardello*, J.) granting the intervenors, Afons and Lucy Rupa (grandparents), visitation and unsupervised telephone contact with her minor child. The petitioner also appeals the trial court's order requiring her to provide transportation related to the grandparents' visitation. We vacate and remand for application of the legal standard for determining an award of grandparent visitation set forth in this opinion.

The trial court found, or the record reflects, the following facts. Tammy and Alan Rupa are the parents of a child born in January 1995. They were divorced on September 14, 2000. The trial court awarded the parties joint

legal custody of the child, while granting Ms. Rupa sole physical custody. Mr. Rupa was awarded visitation with the child on alternate weekends, and although the grandparents were not awarded visitation in the decree, in the years following the divorce Mr. Rupa exercised his visitation at their home in Massachusetts. The child has been diagnosed with pervasive developmental disorder — not otherwise specified, a condition on the autism spectrum, as well as generalized anxiety disorder, obsessive compulsive disorder and attention deficit disorder. In November 2008, the petitioner wrote a letter to the grandparents, advising them that the child was not transitioning well from her weekend visitations and that the petitioner intended to end the child's visits to their home.

The petitioner also filed a petition in the superior court to modify the terms of the divorce decree, in which she requested that Mr. Rupa's and the grandparents' visitation with the child be suspended. The petitioner asserted that appropriate limits for the child were not being set during her visits, that the transitions to and from the grandparents' home resulted in violent outbursts from her, and that Mr. Rupa and the grandparents were unable or unwilling to follow recommended protocol in their visitation. Initially, both Mr. Rupa and the grandparents, who sought to intervene, opposed the petition to modify. At some point, however, Mr. Rupa ceased to participate in the proceedings, and he is not a party to this appeal.

In March 2009, the trial court issued a temporary order on the modification petition, granting the grandparents' request to intervene but altering the visitation schedule to one overnight weekend visit at their home per month, with a second weekend visit per month to occur in Newport, where the petitioner and the child reside. After the child engaged in several violent outbursts at home and at school in April 2009, resulting in her hospitalization and suspension from school, the petitioner filed a petition to modify the temporary order resulting in a May 2009 order further reducing the grandparents' visitation and temporarily eliminating all overnight visits.

Following a final hearing, the trial court issued a permanent modified parenting plan in September 2009 that awarded Ms. Rupa sole residential responsibility and sole decision-making authority for the child. With respect to the grandparents' request for visitation, the trial court found, among other things, that: (1) the grandparents had enjoyed significant contact with the child over the course of her life; (2) between 2000 and 2008 she regularly spent two weekends per month with her grandparents; (3) when not visiting with her grandparents she maintained consistent telephone contact with them; and (4) the grandparents regularly provided travel for the child to and from her visits. As for the petitioner's concerns that transitioning to and from the grandparents' home was having a

negative effect on the child's behavior, the trial court found "insufficient evidence [that her] outbursts and behavioral problems correlate to, and follow, visits with the [grandparents]." The trial court further stated:

> Andy Engart, [the child's] therapist, stated that overnight visits or weekend visits with the [grandparents], which occur in a less structured, less restrictive environment that is more focused on [the child] having fun, "is a good thing." The Court has considered the criteria set forth in RSA 461-A:13, and finds that continued visitation with the [grandparents], which [the child] has enjoyed regularly throughout most of her life, is in her best interest, despite the issues associated with transition.

Based upon these findings, the trial court ruled that the grandparents were entitled to visitation one weekend each month. The court ordered that the parties meet in Milford to begin the visitation, and that the grandparents be responsible for returning the child to the petitioner's home at the end of the visitation. The court also ruled that the grandparents were entitled to unsupervised weekly mail, email and telephone contact with the child. This appeal ensued.

The petitioner first argues that her fundamental right to parent, guaranteed under the Due Process Clause of the Fourteenth Amendment to the United States Constitution and under Part I, Article 2 of the New Hampshire Constitution, was violated when the trial court substituted its judgment for hers regarding the grandparents' visitation with the child. Specifically, she argues that because there is a presumption that fit parents act in their child's best interests, *see Troxel v. Granville*, 530 U.S. 57, 68 (2000), the application of the grandparent visitation statute, RSA 461-A:13 (Supp. 2009), must be limited to those cases in which a finding has been made that a parent is unfit. Because no such finding was made in this case, the petitioner argues that the decision to allow the grandparents' visitation over her objection violated her constitutional rights. The petitioner makes the same arguments with respect to the order for telephonic visitation and the order requiring her to transport the child to Milford for the grandparents' visitation.

"This court has consistently held that we will not consider issues raised on appeal that were not presented in the lower court." *LaMontagne Builders v. Brooks*, 154 N.H. 252, 258 (2006) (quotation omitted). *But see* SUP. CT. R. 16-A (plain error rule). "We require issues to be raised at the earliest possible time, because trial forums should have a full opportunity to come to sound conclusions and to correct errors in the first instance." *Tiberghein v. B.R. Jones Roofing Co.*, 151 N.H. 391, 393 (2004) (quotation omitted). As the appealing party, the petitioner bears the burden of

demonstrating that she raised her issues before the trial forum. *Id.* In this instance, appellate counsel for the petitioner conceded at oral argument that her constitutional claims had not been raised at the trial level. Accordingly, we will not address them.

The petitioner next argues that the trial court erred in its application of RSA 461-A:13 by failing to accord her parental judgments any deference when considering the best interests of her child. While we do not decide the petitioner's constitutional arguments because they have not been preserved, there is a constitutional overlay to her statutory issues. In construing RSA 461-A:13, we must be mindful of our case law addressing when grandparent visitation is constitutionally permissible. *See In the Matter of Dufton & Shepard*, 158 N.H. 784 (2009) (defining "grandmother" for purposes of standing under RSA 461-A:13); *In the Matter of R.A. & J.M.*, 153 N.H. 82 (2005) (plurality opinion) (considering the constitutionality of the predecessor statute to RSA 461-A:13). Moreover, we are guided by the United States Supreme Court opinion in *Troxel*, regarding the fundamental right to parent. Thus, it is against this backdrop that we interpret the language of RSA 461-A:13.

"[W]e are the final arbiter of legislative intent as expressed in the words of the statute considered as a whole." *In the Matter of Watterworth & Watterworth*, 149 N.H. 442, 445 (2003). "We presume that the legislature intended to confine a statute's scope within constitutional limits." *R.A.*, 153 N.H. at 95. "Our goal is to apply statutes in light of the legislature's intent in enacting them and in light of the policy sought to be advanced by the entire statutory scheme." *Appeal of Manchester Transit Auth.*, 146 N.H. 454, 458 (2001). "It is within our purview to establish the constitutional grounds within which a statute may be applied." *R.A.*, 153 N.H. at 104.

RSA 461-A:13, II sets forth criteria that the trial court must consider in determining an award of grandparent visitation with a minor child in the absence of a nuclear family. The statute provides, in relevant part:

> The court shall consider the following criteria in making an order relative to a grandparent's visitation rights to the minor child:
>
> (a) Whether such visitation would be in the best interest of the child.
>
> (b) Whether such visitation would interfere with any parent-child relationship or with a parent's authority over the child.
>
> (c) The nature of the relationship between the grandparent and the minor child, including but not limited to, the frequency of contact, and whether the child has lived with the grandparent and length of such residence, and when there is no reasonable cause to

believe that the child's physical and emotional health would be endangered by such visitation or lack of it.

(d) The nature of the relationship between the grandparent and the parent of the minor child, including friction between the grandparent and the parent, and the effect such friction would have on the child.

(e) The circumstances which resulted in the absence of a nuclear family, whether divorce, death, relinquishment or termination of parental rights, or other cause.

(f) The recommendation regarding visitation made by any guardian ad litem appointed for the child pursuant to RSA 461-A:16.

(g) Any preference or wishes expressed by the child.

(h) Any such other factors as the court may find appropriate or relevant to the petition for visitation.

RSA 461-A:13, II.

■ The authority of the trial court to grant grandparent visitation is derived from RSA 461-A:6, the statute relating to parental rights and responsibilities. The overarching standard for determining parental rights and responsibilities is set forth in section I, which provides, "In determining parental rights and responsibilities, the court shall be guided by the best interests of the child . . . ." RSA 461-A:6, I (Supp. 2009). In keeping with this standard, section V provides, in relevant part: "If the court determines that it is in the best interest of the child[ ], it shall in its decree [of parental rights and responsibilities] grant reasonable visitation privileges to a party who is a . . . grandparent[] of the child[] pursuant to RSA 461-A:13." RSA 461-A:6, V. Thus, the legislature has made clear that the best interests of the child are paramount when the court considers an award of grandparent visitation.

■ In *R.A.*, a grandmother sought joint custody of her grandchild under RSA 458:17, VI (2004), the predecessor to RSA 461-A:6, V, which authorized the trial court to award grandparent visitation, rights or responsibilities. Concluding that RSA 458:17, VI was unconstitutional on its face, the trial court awarded the child's father primary physical custody and the child's mother visitation at the grandmother's home under the grandmother's supervision. In considering the constitutionality of RSA 458:17, VI, we addressed the best interests of the child standard and the weight that must be given to parental determinations of a child's best interests. Chief Justice Broderick, writing the plurality opinion, stated:

[W]hen the legislature recently recodified RSA 458:17, VI as RSA 461-A:6, V, it added various factors that courts must consider in determining the best interest of the child. . . . Consistent with the decision[] in . . . *Troxel*, I now hold that, in determining the best interest of the child, . . . it is not only relevant, but also necessary that a court give special consideration to the wishes of the child's parents.

*R.A.*, 153 N.H. at 98 (construing the language of RSA 458:17, VI relative to child custody).

In *Troxel*, the U.S. Supreme Court considered a Washington State statute that allowed third parties to petition for visitation rights with a minor child. *Troxel*, 530 U.S. 57. In holding that the statute unconstitutionally infringed upon the fundamental right to parent, guaranteed under the Due Process Clause of the Federal Constitution, the Supreme Court stated:

Once the visitation petition has been filed in court and the matter is placed before a judge, a parent's decision that visitation would not be in the child's best interest is accorded no deference. [The statute] contains no requirement that a court accord the parent's decision any presumption of validity or any weight whatsoever. Instead, the Washington statute places the best-interest determination solely in the hands of the judge. Should the judge disagree with the parent's estimation of the child's best interests, the judge's view necessarily prevails. Thus, in practical effect, in the State of Washington a court can disregard and overturn *any* decision by a fit custodial parent concerning visitation whenever a third party affected by the decision files a visitation petition, based solely on the judge's determination of the child's best interests. The Washington Supreme Court had the opportunity to give [the statute] a narrower reading, but it declined to do so.

*Id.* at 67.

In keeping with *Troxel* and our own case law concerning the fundamental rights of parents, we conclude that RSA 461-A:13 requires a narrow construction to comport with state and federal constitutional requirements. *See R.A.*, 153 N.H. at 99; *In the Matter of Jeffrey G. & Janette P.*, 153 N.H. 200, 203 (2006) ("[T]he right of biological and adoptive parents to raise and care for their children is a fundamental liberty interest protected by Part I, Article 2 of the New Hampshire Constitution."); *Roberts v. Ward*, 126 N.H. 388, 391 (1985) (concluding that parental rights "have been found to operate against the State, against third parties and

against the child" (citation omitted)). State and federal courts have long recognized that "there is a constitutional dimension to the right of parents to direct the upbringing of their children." *Troxel*, 530 U.S. at 65; *see also R.A.*, 153 N.H. at 93 ("[W]e and the Supreme Court have a long history of recognizing parents' fundamental rights to the care and custody of their children."); *In re Noah W.*, 148 N.H. 632, 639 (2002) ("RSA chapter 170-C was enacted to provide for the involuntary termination of the parent-child relationship by a judicial process, which will safeguard the rights and interests of all parties."). Moreover, it is a well-established presumption that fit parents act in their child's best interests. *See Troxel*, 530 U.S. at 68; *In the Matter of Nelson & Horsley*, 149 N.H. 545, 546-47 (2003). It is for these reasons that natural and adoptive parents' rights over their children "are not easily set aside." *R.A.*, 153 N.H. at 90. Thus, while there are instances where parental rights must yield to the State's *parens patriae* power in order to ensure the welfare of the child, a parent's determination of what is in the child's best interests must be given special consideration by the trial court. *Troxel*, 530 U.S. at 69 ("The problem here is not that the [trial court] intervened, but that when it did so, it gave no special weight at all to [the mother's] determination of her daughter's best interests."); *cf. In the Matter of Berg & Berg*, 152 N.H. 658, 661 (2005) ("Parental rights are not absolute, but are subordinate to the State's *parens patriae* power, and must yield to the welfare of the child.").

▮ The plain language of RSA 461-A:13 instructs that in determining an award of grandparent visitation the trial court must consider various factors, the first two of which are: "(a) Whether such visitation would be in the best interest of the child," and "(b) Whether such visitation would interfere with any parent-child relationship or with a parent's authority over the child." RSA 461-A:13, II(a), (b). Because both *Troxel* and our own case law have consistently emphasized the significance of the parent-child relationship and the fundamental rights of parents, we hold that in applying RSA 461-A:13 the trial court must weigh the first two statutory factors more heavily than the remaining listed factors, according due deference to a fit parent's judgment as to the best interests of the child as part of the court's determination of the child's best interests. Further, in order to assist in any appellate review, we exercise our supervisory authority over the trial courts and instruct those courts to make express findings of fact with respect to all of the enumerated factors that it considers. *See Fisher v. Minichiello*, 155 N.H. 188, 193 (2007) (exercising supervisory authority and providing instructions to trial courts in their issuance of civil stalking orders).

We will not overturn a trial court's determination regarding an award of visitation except where there has been an unsustainable exercise of discretion. *In the Matter of Kosek & Kosek*, 151 N.H. 722, 724 (2005). Here, although the trial court concluded that it was in the child's best interest to continue overnight visitation with the grandparents, it is not evident from the record that the trial court accorded due deference to the petitioner's determination of the best interests of her child or that it weighed more heavily the first two factors relating to the protected parent-child relationship. Thus, it is not clear that the trial court applied RSA 461-A:13 in a way that comports with the constitutional requirements of due process. We therefore vacate the trial court's order and remand for application of RSA 461-A:13 in light of our holdings herein.

The petitioner also argues that the trial court lacked statutory authority to order: (1) unsupervised telephonic communication between the grandparents and the child up to three times per week; and (2) transportation, at her expense, in order to facilitate the grandparents' visitation. We address these arguments in the event that the trial court, on remand, awards grandparent visitation.

"[I]n matters of statutory interpretation, we are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole." *State v. Pessetto*, 160 N.H. 813, 816 (2010). "We interpret a statute to lead to a reasonable result and review a particular provision, not in isolation, but together with all associated sections." *Appeal of Thermo-Fisher Scientific*, 160 N.H. 670, 672 (2010).

As noted above, RSA 461-A:6 provides the trial court with authority to determine parental rights and responsibilities and expressly states that in doing so "the court shall be guided by the best interests of the child." The statute further provides:

> If the court determines that it is in the best interest of the children, it shall in its decree grant reasonable visitation privileges to a party who is a stepparent of the children or to the grandparents of the children pursuant to RSA 461-A:13.

RSA 461-A:6, V. Thus, references to parental rights and responsibilities within RSA chapter 461-A plainly encompass any potential award of grandparent visitation.

While RSA 461-A:6 establishes the authority and procedure by which to determine parental rights and responsibilities, including grandparent visitation, RSA 461-A:4 provides for the development of a written plan describing those rights and responsibilities. *See* RSA 461-A:1, V (" 'Parenting plan' means a written plan describing each parent's rights and

responsibilities."); RSA 461-A:4 ("Parenting Plans; Contents."). RSA 461-A:4, I, provides that "[i]n developing a plan under this section, the court shall consider only the best interests of the child as provided in RSA 461-A:6 and the safety of the parties." Thus, if grandparent visitation is awarded under RSA 461-A:6, then the provisions of RSA 461-A:4 necessarily apply to any such visitation.

■ RSA 461-A:4, II states that "[a] parenting plan may include provisions relative to . . . [i]nformation sharing and access, including telephone and electronic access . . . [and] [t]ransportation and exchange of the child." Therefore, contrary to the petitioner's argument, we conclude that there is statutory authority for the trial court to award the grandparents telephonic access to the child and to order the sharing of transportation responsibilities.

*Vacated and remanded.*

DALIANIS, C.J., and DUGGAN and HICKS, JJ., concurred.