Merrimack County Probate Court
No. 2011-038

## IN RE ATHENA D.

Submitted: May 12, 2011
Opinion Issued: June 30, 2011

Jennifer N. and Ralph N., by brief, *pro se.*

*Michael A. Delaney,* attorney general (*Rebecca L. Woodard,* attorney, on the memorandum of law), for the New Hampshire Division for Children, Youth and Families.

Marcia L. and Terry L., *pro se,* filed no brief.

DUGGAN, J. The appellants, the maternal grandparents of Athena D., appeal orders of the Merrimack County Probate Court (*Hampe,* J.) dismissing their petition for grandparent visitation, *see* RSA 461-A:13 (Supp. 2010), for lack of subject matter jurisdiction; denying their motion to stay the adoption of Athena while they pursue a petition for grandparent visitation in the family division; and denying their request to order the adoptive parents to allow their continued visitation and contact with the child. We affirm.

Athena D. was born in October 2003. She was removed from her parents' care shortly thereafter because of concern for her safety. Following a brief placement in a foster home, she was placed with her maternal grandparents when she was three months old. Athena's parents' parental rights were terminated on January 26, 2006, and Athena has been in the legal custody of the New Hampshire Division for Children, Youth and Families (DCYF) since that time.

DCYF's initial plan was for the grandparents to adopt Athena; however, for various reasons, including Athena's behavioral problems and their own age, they were reluctant to proceed with the adoption. When the grandparents finally indicated that they would not adopt Athena, DCYF included them in the selection process for an adoptive family. Athena was placed with the H. family, a family chosen by the grandparents, despite DCYF's concerns about the selection. After Athena was transitioned to the H. family with the participation of the grandparents, her behavior deteriorated and the H. family ultimately had her removed from their home.

When Athena was removed from the H. family's home, the grandparents did not indicate to DCYF that they wanted her returned to them for eventual adoption, but instead offered to provide respite care while a new adoptive family could be found. DCYF determined that such a temporary placement would be harmful to Athena and declined. Athena was then placed into a respite care home.

DCYF moved quickly to place Athena with another adoptive family and chose the L. family before the grandparents were fully aware that the

process was underway. When the grandparents were made aware that the L. family had been chosen, they immediately raised objections, and eventually sought to adopt Athena.

Athena transitioned well into the L. family and her behavior improved significantly. Athena's counselor testified that Marcia L. exhibited the "most natural attachment she ha[d] ever observed" and that Athena told her that she wanted to be adopted by the L. family.

The L. family and the grandparents filed competing petitions for the adoption of Athena with the probate court. After a hearing on the petitions held over sixteen days, the court found that it was in the best interest of Athena to grant the L. family's petition for adoption and to deny the grandparents' petition. The court found that the grandparents changed their minds about adopting Athena only because of their opposition to the L. family. The court found that the L. family was an "exceptional family" and noted that the guardian ad litem strongly supported their petition. The grandparents appealed the probate court's order and we affirmed. *See In re Athena D.*, No. 2010-500 (N.H. October 22, 2010).

The grandparents subsequently filed a petition for grandparent visitation under RSA 461-A:13. The probate court dismissed the petition for lack of jurisdiction, noting that it should be filed in the family division. The probate court order also expressed doubt as to whether relief under RSA 461-A:13 could be granted after the adoption was finalized. The grandparents then moved to stay the adoption until the petition for visitation could be filed in the family division. The probate court denied the motion, finding that it was in Athena's best interest to have her adoption finalized as soon as possible. The grandparents moved to reconsider and sought approval of an interlocutory transfer to this court to resolve the issue. The grandparents also moved to require the L. family to grant them visitation with Athena. The probate court denied both motions.

On appeal, the grandparents argue that they have a right to seek visitation under RSA 461-A:13, that the probate court erred by "not resolving this issue prior to granting the adoption of Athena," that the probate court "fail[ed] to give sufficient review to post hearing documents that indicated bad faith on the part of the [L.] family to support an enduring relationship between Athena and her grandparents and other close family relatives," and that "the adoption of Athena . . . [should] be void until resolution of these substantive issues concerning her best interest."

"The probate court is not a court of general jurisdiction. Its powers are limited to those conferred upon it by statute." *Petition of CIGNA Healthcare*, 146 N.H. 683, 688 (2001) (quotation omitted). Thus, determining the jurisdiction of the probate court requires us to engage in statutory

interpretation. The interpretation of a statute is a matter of law, which we review *de novo*. *Zorn v. Demetri*, 158 N.H. 437, 438 (2009). In matters of statutory interpretation, we are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole. *Id*. We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. *Id*. We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. *Id*. We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result. *Id*. Moreover, we do not consider words and phrases in isolation, but rather within the context of the statute as a whole. *Id*. at 438-39.

RSA 461-A:13, which governs grandparent visitation rights, requires the petition for visitation to be entered

> in the court which has jurisdiction over the divorce, legal separation, or a proceeding brought under this chapter. In the case of death of a parent, stepparent adoption, or unwed parents . . . the petition shall be entered in the court having jurisdiction to hear divorce cases from the town or city where the child resides.

RSA 461-A:13, III.

RSA 461-A:13, I, contemplates grandparent visitation rights when a child's nuclear family is absent due to "divorce, death, relinquishment or termination of parental rights, or other cause." *See In the Matter of Dufton & Shepard*, 158 N.H. 784, 788 (2009). Here, Athena's nuclear family is absent as the result of termination of parental rights. While RSA 461-A:13, III does not specifically address cases involving the termination of parental rights, in construing all parts of the statute together in order to effectuate the overall purpose, we conclude that petitions for grandparent visitation in the case of the termination of parental rights are to be treated in the same manner as in the case of the death of a parent, stepparent adoption, or unwed parents.

The grandparents contend that the termination of parental rights is a "proceeding brought under this chapter," RSA 461-A:13, III, and since the probate court had jurisdiction over that proceeding, the petition for grandparent visitation was properly filed in the probate court. However, "under this chapter" refers to RSA chapter 461-A, and because the termination of parental rights is not a proceeding that could be brought under RSA chapter 461-A, this argument fails. Instead, the petition for

grandparent visitation must be entered "in the court having jurisdiction to hear divorce cases from the town or city where the child resides." RSA 461-A:13, III.

Moreover, RSA 547:3 (Supp. 2010) defines the jurisdiction of the probate courts. Nothing in RSA 547:3 grants the probate court authority over divorce cases. Thus the probate court lacked jurisdiction to hear the grandparents' petition for visitation.

We also reject the grandparents' argument that the probate court's jurisdiction over ancillary matters as defined in RSA 547:3-*l* includes RSA 461-A:13 petitions. Rather, the "ancillary matters" over which the probate court has jurisdiction are expressly limited to "claims for liquidated or non-liquidated damages or for the recovery of money or property brought on behalf of an estate, trust, conservatorship, or guardianship against a third party or brought by a third party against an estate, trust, conservatorship, or guardianship." RSA 547:3-*l* (Supp. 2010). Because RSA 461-A:13, III requires a petition for grandparent visitation to be filed in the court having jurisdiction to hear divorce cases from the town or city where Athena resides, and RSA 547:3 does not confer upon the probate court the power to decide divorce cases, we conclude that the probate court did not err by dismissing the petition for grandparent visitation.

Nor did the probate court err by denying the grandparents' motion to stay the adoption while they litigated a petition for grandparent visitation rights in the family division. Whether to stay judicial proceedings is a matter left to the sound discretion of the trial court. *See In re Baby K.*, 143 N.H. 201, 204 (1998). Here, the record reflects that the parental rights of Athena's biological parents were terminated on January 26, 2006. Thereafter, Athena was placed with multiple families, including her maternal grandparents, who initially decided to adopt her but then changed their minds. She has documented behavioral problems which have seen marked improvement while living with the L. family. Under these circumstances, the probate court's conclusion that it was "in Athena's best interest to have her adoption finalized as soon as possible" was not an unsustainable exercise of discretion.

Finally, to the extent the grandparents argue that the probate court "fail[ed] to give sufficient review to post hearing documents that indicated bad faith on the part of the [adoptive parents]" in ending contact between Athena and the grandparents, we again note that the probate court lacked jurisdiction over the issue of grandparent visitation. The grandparents'

remaining arguments are without merit, warranting no further discussion. *See Vogel v. Vogel*, 137 N.H. 321, 322 (1993).

*Affirmed.*

DALIANIS, C.J., and HICKS, CONBOY and LYNN, JJ., concurred.