NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

10th Circuit Court-Brentwood Family Division
No. 2021-0587


IN THE MATTER OF BRIANNA KAUBLE AND WILLIAM KAUBLE


Submitted: January 31, 2023
Opinion Issued: September 19, 2023


Champions Law, of Portsmouth (Jared Bedrick on the brief), for the petitioner.


Cordell and Cordell PC, of Bedford (M. Chantal Crawley on the brief), for the respondent.


Herbert Novell, self-represented party, on the brief, as intervenor.


BASSETT, J. The petitioner, Brianna Kauble, appeals the order of the Circuit Court (Hall, J.) granting the request of the intervenor, Herbert Novell, for grandparent visitation. See RSA 461-A:13 (2018). Because we determine that the intervenor lacked standing under RSA 461-A:13 to seek grandparent visitation, we reverse.

The trial court found, or the record supports, the following facts. Brianna Kauble (Mother) and the respondent, William Kauble (Father), were previously married and have three children. Herbert Novell (Grandfather) is Mother's father, and therefore the grandfather of her children.

In 2018, while Mother and Father were married, Grandfather helped Mother and the children relocate from Arizona to live with him in New Hampshire. Father remained in Arizona to continue working. In March 2019, after living with Grandfather for six months, Mother and the children moved out. In June 2019, Mother filed a petition for divorce from Father. In the spring of 2020, while the divorce petition was pending, Mother's relationship with Grandfather became strained due to his refusal to pay for her divorce attorney and his disapproval of her new boyfriend. As a result, in June 2020, Mother cut off all contact between Grandfather and the children.

Grandfather subsequently intervened in the divorce proceeding and filed a motion seeking visitation under RSA 461-A:13, the grandparent visitation statute. Mother moved to dismiss that request, arguing that Grandfather lacked standing to seek visitation under RSA 461-A:13. The trial court denied that motion and concluded Grandfather had standing.

Mother and Father later stipulated to a final decree of divorce, which was approved by the circuit court in May 2021. In October, following an evidentiary hearing, the circuit court granted Grandfather's request for visitation with the children. Mother filed a motion to reconsider, which the court denied. This appeal followed.

In Mother's opening brief, she argues that the trial court erred when it granted Grandfather visitation because he lacked standing under RSA 461-A:13. Although, in her reply brief, Mother "waived" this argument, we nevertheless address whether Grandfather had standing because standing "presents a question of subject matter jurisdiction," In re Guardianship of Williams, 159 N.H. 318, 323 (2009), and subject matter jurisdiction cannot be conferred by waiver, Cooperman v. MacNeil, 123 N.H. 696, 700 (1983). Moreover, even if Mother had never challenged Grandfather's standing, we could raise the issue sua sponte. See Williams, 159 N.H. at 322-23.

In this case, whether Grandfather had standing turns on our interpretation of the grandparent visitation statute. See RSA 461-A:13; In the Matter of P.B. & T.W., 167 N.H. 627, 630 (2015) ("When the legislature has clearly delineated the class that can petition to enforce a statutory scheme, we will implement that determination meticulously." (quotation omitted)). Statutory interpretation presents a question of law for us to decide. See State v. Surrell, 171 N.H. 82, 85 (2018). When construing a statute, we first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. Petition of Lundquist, 168 N.H.

629, 631 (2016). We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. Id. We construe all parts of the statute together to effectuate its overall purpose and to avoid an absurd or unjust result. Williams, 159 N.H. at 323. In construing RSA 461-A:13 in particular, we must also "be mindful of our case law addressing when grandparent visitation is constitutionally permissible." In the Matter of Rupa & Rupa, 161 N.H. 311, 315 (2010); see also id. at 318 ("State and federal courts have long recognized that there is a constitutional dimension to the right of parents to direct the upbringing of their children." (quotation omitted)).

RSA 461-A:13, I, provides:

Grandparents, whether adoptive or natural, may petition the court for reasonable rights of visitation with the minor child as provided in paragraph III. The provisions of this section shall not apply in cases where access by the grandparent or grandparents to the minor child has been restricted for any reason prior to or contemporaneous with the divorce, death, relinquishment or termination of parental rights, or other cause of the absence of a nuclear family.

RSA 461-A:13, I (emphasis added). "We have construed this statute to authorize grandparents to petition for visitation only when one of the conditions listed at the end of the second sentence has come to pass." P.B., 167 N.H. at 629 (quotation omitted). However, a grandparent does not have standing to seek visitation if the grandparent's access to the grandchild was restricted prior to or contemporaneous with the enumerated condition. Id.

Mother and Grandfather disagree as to which of the conditions enumerated in RSA 461-A:13, I, applies. They also disagree about whether Grandfather's access to the children was restricted prior to or contemporaneous with one of those conditions. Father, for his part, "takes no stance on the grant of grandparent visitation." We first address the parties' arguments about which of the enumerated circumstances applies.

In her opening brief, Mother contended that the applicable enumerated circumstance was her divorce from Father. Grandfather counters that, before Mother and Father divorced, some "other cause of the absence of a nuclear family" occurred. He asserts that such "other cause" occurred either when Mother initially moved to New Hampshire with the children while Father remained in Arizona or subsequently when Mother's new boyfriend moved in with her and the children. We agree with Mother.

In order to resolve the parties' dispute about which enumerated condition applies in this case, we must interpret the meaning of the phrase

3

"other cause of the absence of a nuclear family" in RSA 461-A:13, I. When, as here, general words follow an enumeration of specific persons or things, we construe the general words as "applying only to persons or things of the same kind or class as those specifically mentioned." State v. Proctor, 171 N.H. 800, 806 (2019) (quotation omitted) (explaining statutory interpretation principle of ejusdem generis). Applying this principle to RSA 461-A:13, I, we construe the general phrase "other cause of the absence of a nuclear family" as limited to circumstances that are of the same or similar nature as those enumerated. See id. The conditions enumerated in the statute that vest a grandparent with standing — divorce, death, and relinquishment or termination of parental rights — are all final, or, at a minimum, are not transitory circumstances. See RSA 461-A:13, I. Accordingly, in order for some other condition to fall within the general category of "other cause of the absence of a nuclear family," it must also share that characteristic. See id.

The two circumstances that Grandfather identifies are both transitory. In 2018, prior to the filing of the divorce petition, Mother told Grandfather that "she and [Father] wanted to relocate to New Hampshire," but that they could not afford to do so. Grandfather agreed to help the family by paying for Mother and the children to relocate to New Hampshire in November 2018. The trial court found that "[Father] did not come initially, as he was working." These findings reflect that, at least initially, Mother and Father intended to live apart temporarily. Further, the fact that Mother's new boyfriend subsequently moved in with her and the children was similarly impermanent. When Mother's boyfriend moved in with her, the divorce petition was pending but the final divorce decree had not yet issued. It was therefore possible that Mother and Father could reconcile and decide not to divorce. See In the Matter of Sweatt & Sweatt, 170 N.H. 414, 418-19 (2017) (observing that dissolution of marriage was final after court issued divorce decree and it was not appealed). Accordingly, we conclude that neither circumstance Grandfather relies upon is similar enough to the enumerated conditions to be considered an "other cause of the absence of a nuclear family."

Our reading of the statute comports with the constitutional context in which we must interpret RSA 461-A:13, I. Parents have a fundamental right, protected by the State and Federal Constitutions, to raise and care for their children. In the Matter of Nelson & Horsley, 149 N.H. 545, 547 (2003). Given this fundamental right, we have held that RSA 461-A:13 must be accorded "a narrow construction." Rupa, 161 N.H. at 317. Interpreting the statute to vest grandparents with standing to seek visitation whenever married parents live apart — however temporarily and whether living with a new partner or not — could give rise to unwarranted interference with fundamental parental rights. For these reasons, we are not persuaded by Grandfather's argument that a circumstance other than divorce caused "the absence of a nuclear family." Rather, we agree with Mother that, on these facts, the enumerated condition

was the parents' divorce, which became final in May 2021.  See RSA 461-A:13, I.

Having determined that the divorce is the applicable circumstance, we must now decide whether Grandfather's access to the children was "restricted for any reason prior to or contemporaneous with the divorce."  Id.  The trial court's factual findings establish that it was.  Mother filed the divorce petition in June 2019 and the divorce was finalized in May 2021.  The trial court found that Mother terminated contact between the children and Grandfather in June 2020 — prior to the finalization of the divorce.  Because Mother restricted Grandfather's access to the children "prior to" the parents' divorce, RSA 461-A:13 "shall not apply" and, therefore, Grandfather lacked standing to seek visitation.  RSA 461-A:13, I; see also P.B., 167 N.H. at 630 ("Here, because [the child's] parents did not restrict the [grandparents'] ability to visit [the child] 'prior to or contemporaneous with' their deaths, their deaths conferred standing upon [the grandparents] to file for grandparent visitation." (emphasis added)).

We conclude that, because Grandfather lacked standing to seek visitation under RSA 461-A:13, I, the trial court erred when it denied Mother's motion to dismiss for lack of standing.  Grandfather's lack of standing deprived the circuit court of subject matter jurisdiction.  See Carlson, Tr. v. Latvian Lutheran Exile Church of Boston and Vicinity Patrons, 170 N.H. 299, 305 (2017).  Because "any action taken by a court without jurisdiction is void," we need not address the parties' other arguments.  McLaughlin v. Mullin, 139 N.H. 262, 265-66 (1994) (quotation omitted).  We observe that, if the legislature disagrees with our statutory interpretation, it is free, subject to constitutional limitations, to amend RSA 461-A:13, I, as it sees fit.  See Proctor, 171 N.H. at 807.

Reversed.

MACDONALD, C.J., and HICKS, HANTZ MARCONI, and DONOVAN, JJ., concurred.

5