NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

8th Circuit Court-Keene Family Division
No. 2016-0079

PETITION OF ERIC WILLEKE AND REGINA WILLEKE

Submitted: February 16, 2017
Opinion Issued: May 12, 2017

Law Offices of Joseph S. Hoppock, PLLC, of Keene (Joseph S. Hoppock on the brief), for the petitioners.

Samantha Pelc, self-represented party, filed no brief.

Tyler Wyman, self-represented party, filed no brief.

HICKS, J. The petitioners, Eric and Regina Willeke, appeal an order of the Circuit Court (Forrest, J.) dismissing their petition for visitation with their now five-year-old great-grandchild for lack of standing. We affirm.

The relevant facts follow. Regina Willeke is the maternal great-grandmother of the child. Eric Willeke is the child's maternal step-great-grandfather. The Willekes' petition alleges that the child lived with the petitioners for most of her life. They were her guardians until November 12, 2015, and they sought great-grandparent visitation rights on September 22, 2015. Tyler Wyman, the child's father, responded to the petition, arguing that New Hampshire law does not confer upon great-grandparents standing to seek

visitation.  The trial court construed the answer as a motion to dismiss, to which the petitioners objected.  In their objection, the petitioners argued that they have a common-law right to seek visitation with the child and, alternatively, that RSA 461-A:13 (Supp. 2016) should be interpreted as conferring upon great-grandparents standing to petition for visitation.

The trial court granted the motion to dismiss, concluding "that the words of [RSA 461-A:13] are not ambiguous and are intended to afford rights to grandparents only."  The trial court did not address the petitioners' common-law claim.

On appeal, the petitioners do not argue that the trial court erred in interpreting RSA 461-A:13.  Instead, they argue only that they have common-law standing, independent of RSA 461-A:13, to request that the trial court exercise its parens patriae power to grant them visitation with the child.  In the petitioners' view, the common-law right to seek visitation survived the 1991 amendment of RSA 458:17, VI (1983 & Supp. 1991) (amended 2003) (repealed 2005) and the enactment of RSA 458:17-d (1992) (amended 1993, 2004) (repealed 2005), which were succeeded by RSA 461-A:6, V (Supp. 2016) and RSA 461-A:13 respectively, see Laws 2005, 273:1, :20.  Thus, the petitioners conclude that the trial court's failure to "consider the availability" of its parens patriae power to order great-grandparent visitation was error.  They also argue that the principles of Troxel v. Granville, 530 U.S. 57 (2000) (plurality opinion), adopted by this court in In the Matter of Rupa & Rupa, 161 N.H. 311, 317-18 (2010), "[a]re [n]ot [o]ffended" by the court's exercise of that parens patriae power.  (Bolding omitted.)  Because we conclude that RSA 458:17, VI, as amended in 1991, and RSA 458:17-d and their statutory successors extinguished courts' common law parens patriae power to order visitation, we need not determine whether the exercise of that power to order great-grandparent visitation would offend the principles of Troxel.

"Usually, in ruling upon a motion to dismiss, the trial court is required to determine whether the allegations contained in the petitioners' pleadings are sufficient to state a basis upon which relief may be granted."  Petition of Lundquist, 168 N.H. 629, 631 (2016) (quotation omitted).  "To make this determination, the court would accept all facts pleaded by the petitioners to be true and construe all reasonable inferences in the light most favorable to the petitioners."  Id. (quotation omitted).  "When, however, the motion to dismiss does not contest the sufficiency of the petitioners' legal claim, but instead challenges their standing to sue, the trial court must look beyond the allegations and determine, based upon the facts, whether the petitioners have sufficiently demonstrated a right to claim relief."  Id. (quotation omitted). "Because the underlying facts are not in dispute, we review the trial court's decision de novo."  Id. (quotation omitted).

Determining whether RSA 458:17, VI, as amended in 1991, RSA 458:17-d, and their successors, RSA 461-A:6, V and RSA 461-A:13, abrogated the common-law right to petition for visitation requires that we engage in statutory interpretation. "Statutory interpretation is a question of law, which we review de novo." Id. (quotation omitted). In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole. Id. We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. Id. We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. Id.

Prior to 1989, RSA 458:17, VI (1983) (amended 1991, 2003) (repealed 2005) empowered courts to order grandparent visitation only in divorce proceedings. See Roberts v. Ward, 126 N.H 388, 390-91 (1985). Under the common law, however, courts could use their "parens patriae power to permit grandparental visitation when it [was] in the best interests of the child, in situations where RSA 458:17, VI [was] not applicable." Id. at 392. In deciding that courts could grant grandparent visitation outside divorce proceedings, we explained that:

> It would be shortsighted indeed, for this court not to recognize the realities and complexities of modern family life, by holding today that a child has no rights, over the objection of a parent, to maintain a close extra-parental relationship which has formed in the absence of a nuclear family.

Id. Thus, Roberts recognized a common-law right of grandparents and others with whom a child had formed a close extra-parental relationship to petition for visitation — outside divorce proceedings — in the absence of a nuclear family. Id.

In 1989, the legislature enacted RSA 458:17-d, which provided, in relevant part, that:

> Grandparents, whether adoptive or natural, may petition the court for reasonable rights of visitation with the minor child as provided in paragraph III. The provisions of this section shall not apply in cases where access by the grandparent or grandparents to the minor child has been restricted for any reason prior to or contemporaneous with the divorce, death, relinquishment or termination of parental rights, or other cause of the absence of a nuclear family.

RSA 458:17-d, I; Laws 1989, 314:2. When the legislature passed RSA 458:17-d in 1989, it simultaneously amended RSA 458:17, VI to reflect that

courts could grant visitation to grandparents pursuant to RSA 458:17-d. Laws 1989, 314:1-2. Later, in 1991, RSA 458:17, VI was amended to read, in relevant part:

> If the court determines that it is in the best interest and welfare of the children, it shall in its decree grant reasonable visitation privileges to a party who is a stepparent of the children or to the grandparents of the children pursuant to RSA 458:17-d.

Laws 1991, 93:1.

In 2005, the legislature repealed a large portion of RSA chapter 458 and replaced it with RSA chapter 461-A, entitled "PARENTAL RIGHTS AND RESPONSIBILITIES." See RSA ch. 458 (2004 & Supp. 2016); RSA ch. 461-A (Supp. 2016); Laws 2005, ch. 273. RSA chapter 461-A controls "cases concerning parental rights and responsibilities," RSA 461-A:3 (Supp. 2016), and is not limited to divorce cases, see RSA 461-A:13 ("The petition for visitation shall be entered in the court which has jurisdiction over the divorce, legal separation, or a proceeding brought under this chapter."). The sentence of RSA 458:17, VI, as amended in 1991, that authorized stepparent and grandparent visitation was incorporated into RSA 461-A:6, V. Compare RSA 458:17, VI, with RSA 461-A:6, V. RSA 461-A:13 replaced RSA 458:17-d, and the two statutes are substantially similar. Compare RSA 458:17-d, with RSA 461-A:13.

Generally, "[w]e will not construe a statute . . . as abrogating the common law unless the statute clearly expresses such an intention." Univ. Sys. of N.H. Bd. of Trs. v. Dorfsman, 168 N.H. 450, 454 (2015) (quotation omitted). However, when a statute revises the entire subject of a common law cause of action and is clearly designed as a substitute, the common law is abrogated, although no express terms to that effect are used. See Powell v. Catholic Med. Ctr., 145 N.H. 7, 11 (2000). This rule rests upon the principle that:

> [W]hen the legislature frames a new statute upon [a] subject–matter, and from the framework of the act it is apparent that the legislature designed a complete scheme for this matter, it is a legislative declaration that whatever is embraced in the new law shall prevail, and whatever is excluded is discarded.

Id. (quotation and ellipsis omitted). We conclude that RSA 458:17, VI, as amended in 1991, and RSA 458:17-d abrogated the common-law right to petition for visitation because the statutes revised the entire subject of visitation and were designed as a substitute.

4

The legislature's intent to revise the entire subject of visitation is evident because RSA 458:17, VI, as amended in 1991, and RSA 458:17-d conferred standing upon stepparents and grandparents to seek visitation in the same circumstances that the common law, together with the earlier version of RSA 458:17, VI, conferred standing upon those with whom a child had formed a close extra-parental relationship. RSA 458:17-d specifically permitted grandparents standing to seek visitation in "the absence of a nuclear family." RSA 458:17-d, I; see O'Brien v. O'Brien, 141 N.H. 435, 436-37 (1996) (construing RSA 458:17-d to authorize grandparent visitation only when one of the following conditions has come to pass: "divorce, death, relinquishment or termination of parental rights, or other cause of the absence of a nuclear family" (quotation omitted)). The common law conferred standing upon those with whom a child had formed a close extra-parental relationship in substantially similar circumstances. Roberts, 126 N.H. at 390-92 (discussing court's parens patriae power to grant visitation in certain circumstances outside of divorce proceedings, and explaining that RSA 458:17, VI controlled visitation in divorce proceedings). In fact, the legislature incorporated the very language used in Roberts: "the absence of a nuclear family." RSA 458:17-d, I; RSA 461-A:13, I; see Roberts, 126 N.H. at 392.

The fact that RSA 458:17, VI, as amended in 1991, and RSA 458:17-d did not simply codify Roberts, but rather significantly altered the standard we articulated in Roberts, demonstrates that the statutes were designed as a substitute for the common law. The statutes altered the common law in four respects. First, the legislature circumscribed the class of people who could petition for visitation. When it amended RSA 458:17, VI in 1991, the legislature permitted only grandparents and stepparents to seek visitation. Laws 1991, 93:1. By contrast, the common law conferred standing to seek visitation upon anyone with whom a child had formed a close extra-parental relationship. Roberts, 126 N.H. at 392. Second, RSA 458:17-d changed the manner in which courts decide whether to grant grandparent visitation. The statute required courts to consider the factors that, in Roberts, we only suggested, but did not require, that they consider. See RSA 458:17-d, II (listing factors suggested in Roberts); Roberts, 126 N.H. at 394. It also added two factors that courts must consider. See RSA 458:17-d, II (requiring courts to also address a guardian ad litem's recommendation and whether visitation would interfere with parent's authority over child or with parent-child relationship); Roberts, 126 N.H. at 394. Third, RSA 458:17-d added the significant caveat that no visitation would be permitted if the grandparent's access to the child had been "restricted for any reason" prior to the triggering condition. RSA 458:17-d, I. Finally, the statute dictated where the petition should be filed and allocated the costs of the petition. RSA 458:17-d, III, VII.

Accordingly, we now hold that the common-law right to petition for visitation was superseded by the enactment of RSA 458:17, VI, as amended in 1991, and RSA 458:17-d because the legislature revised the entire subject of

5

visitation, and the statutes were clearly designed as substitutes for the common law.  The legislature preserved that statutory scheme when it enacted RSA 461-A:6, V and RSA 461-A:13.  Therefore, we conclude that the trial court did not err when it did not consider its <u>parens</u> <u>patriae</u> power as a basis to order great-grandparent visitation.  Thus, we affirm the trial court's dismissal of the great-grandparents' petition for visitation for lack of standing.

Finally, any issues raised in the notice of appeal, but not briefed, are deemed waived.  <u>See</u> <u>Town of Barrington v. Townsend</u>, 164 N.H. 241, 251 (2012).

<u>Affirmed</u>.

DALIANIS, C.J., and CONBOY, LYNN, and BASSETT, JJ., concurred.