NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

10th Circuit Court-Brentwood Family Division
No. 2018-0061


IN THE MATTER OF RICHELL CHRESTENSEN AND SEAN PEARSON

Argued: October 24, 2018
Opinion Issued: March 8, 2019


Simmons & Ortlieb, PLLC, of Hampton (John Anthony Simmons, Sr. on the brief and orally), for the appellant.


Marshall Law PLLC, of East Kingston (Brian D. Kenyon on the memorandum of law and orally), for the appellee.


HANTZ MARCONI, J. The appellant, Sean Pearson, appeals an order of the Circuit Court (LeFrancois, J.) dismissing his petitions for parenting time for lack of standing. He contends that he has standing to seek parenting time pursuant to our holding in In the Matter of J.B. & J.G., 157 N.H. 577 (2008), even though he surrendered his parental rights to the child at issue in 2012. We agree with the trial court that the appellant lacks standing and, therefore, we affirm.

The trial court set forth, or the record reflects, the following undisputed facts. The appellee, Richell Stiles (formerly Chrestensen) (mother), gave birth to a child in March 2010. The appellant is the biological father of that child. In 2012, the appellant surrendered his parental rights to the child. See RSA 170-B:5, :9-:11 (2014). In conjunction with the surrender, the mother adopted the

child and became the child's sole parent.  See RSA 170-B:4 (2014).  The mother allowed the appellant to have contact with the child after the surrender, although the parties dispute the nature and frequency of that contact.

The appellant moved to reopen the surrender case in 2014.  The probate division denied the motion after reviewing, inter alia, the recording of the 2012 hearing at which the appellant surrendered his parental rights to the child. Based on the record, the probate division concluded that the appellant "was fully advised of his rights at the time of the [surrender] proceeding," "knowingly and voluntarily waived those rights," and "freely and voluntarily acknowledged" that he would no longer be the parent of the child upon the court's acceptance of the surrender.

In 2017, the appellant filed petitions for parenting time with the child in the family division.  The mother moved to dismiss, arguing in part that the appellant lacked standing because he had surrendered his parental rights to the child in 2012.  The appellant, relying on J.B. & J.G., asserted that he had standing because he had "acted as [the child]'s father" in the years since the surrender.  At the appellant's request, the trial court held an evidentiary hearing on the motion to dismiss, at which it heard testimony concerning, inter alia, the frequency and nature of the appellant's contact with the child post-surrender.  Following the hearing, the court granted the motion to dismiss for lack of standing.  This appeal followed.

The issue presented in this appeal is whether a father who surrendered his parental rights to a child has standing to maintain a subsequent petition for parenting time with that child under RSA chapter 461-A (2018) (amended 2018).  The appellant argues that he is a "parent" for purposes of RSA chapter 461-A, and thus has standing to maintain a petition for parenting time with the child.  He contends that he has "re-establish[ed] his 'parental status'" by continuing to act "as the child's father" since the surrender.  He argues that his post-surrender contact with the child is sufficient to establish his status as a "parent" pursuant to our holding in J.B. & J.G., 157 N.H. at 580-81.  The mother counters that the appellant "has no standing to request an award of parenting rights or responsibilities of any kind" because he surrendered his parental rights pursuant to RSA chapter 170-B (2014 & Supp. 2018).

Usually, in ruling upon a motion to dismiss, the trial court is required to determine whether the allegations contained in the petitioner's pleadings are sufficient to state a basis upon which relief may be granted.  Petition of Willeke, 169 N.H. 802, 804 (2017).  To make this determination, the court would accept all facts pleaded by the petitioner as true and construe all reasonable inferences in the light most favorable to the petitioner.  Id.  When, however, the motion to dismiss does not contest the sufficiency of the petitioner's legal claim, but instead challenges the petitioner's standing to sue, the trial court must look beyond the allegations and determine, based upon the facts,

2

whether the petitioner has sufficiently demonstrated a right to claim relief.  Id. When the trial court has made findings of fact on the issue of standing, we generally review those factual findings deferentially.  See Hannaford Bros. Co. v. Town of Bedford, 164 N.H. 764, 767 (2013).  When the relevant facts are not in dispute, we review the trial court's standing determination de novo.  See id.; K.L.N. Construction Co. v. Town of Pelham, 167 N.H. 180, 183 (2014).

In this case, the appellant requested — and the trial court held — an evidentiary hearing so that the court could make factual findings concerning his post-surrender contact with the child, contact on which he relies for his assertion of standing.  The appellant challenges a number of the trial court's factual findings on appeal.  Because we conclude that he lacks standing as a matter of law based on the facts that are not in dispute, we need not consider the trial court's factual findings or the appellant's challenges to them.

Resolving the issue presented in this appeal requires that we engage in statutory interpretation.  Specifically, we must interpret provisions of RSA chapter 461-A, which governs parental rights and responsibilities, see J.B. & J.G., 157 N.H. at 580, and RSA chapter 170-B, which governs adoption and surrender of parental rights, see RSA 170-B:1 (2014).  In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole.  J.B. & J.G., 157 N.H. at 579.  When examining the language of a statute, we ascribe the plain and ordinary meaning to the words used.  In re Guardianship of Madelyn B., 166 N.H. 453, 458 (2014).  We also interpret the statute in the context of the overall statutory scheme and not in isolation.  Id.  Our goal is to apply statutes in light of the legislature's intent in enacting them, and in light of the policy sought to be advanced by the entire statutory scheme.  Id. at 459.  When interpreting two statutes that deal with a similar subject matter, we construe them so that they do not contradict each other, and so that they will lead to reasonable results and effectuate the legislative purpose of the statutes.  J.B. & J.G., 157 N.H. at 579.

RSA chapter 461-A provides the trial court with authority to determine "parental rights and responsibilities."  See RSA 461-A:3, :6 (amended 2018); In the Matter of Rupa & Rupa, 161 N.H. 311, 319 (2010).  The term "parental rights and responsibilities" is defined to mean "all rights and responsibilities parents have concerning their child."  RSA 461-A:1, IV; accord J.B. & J.G., 157 N.H. at 580.  RSA chapter 461-A does not explicitly define the term "parent." J.B. & J.G., 157 N.H. at 580.  The appellant relies on our decision in J.B. & J.G. to argue that he is a "parent" for purposes of RSA chapter 461-A.

In J.B. & J.G., we considered whether the petitioner had standing to maintain a parenting petition under RSA chapter 461-A where paternity testing had confirmed that he was not the child's biological father.  See id. at 578-79. The respondent, the child's biological mother, argued that the petitioner was

3

not a "parent" under RSA chapter 461-A because he did not meet the dictionary definition of "one that begets or brings forth offspring." Id. at 578, 580 (quotation omitted). We disagreed with the respondent and concluded that the legislature did not intend "such a limited definition of the term 'parent' when it repeatedly employed that term in RSA chapter 461-A." Id. at 580. We explained:

> After considering the overarching statutory scheme in this area, as we must, we observe that the legislature has set forth too many alternative routes to establish parental status that do not require proof of biological ties for us to give the respondent's argument much weight. See, e.g., RSA ch. 170-B (Supp. 2007) (outlining adoption procedures); RSA 458:23 (2004) (legitimacy of child presumed when born of a marriage entered into in good faith); RSA 168-A:2, I(a) (2002) (paternity may be established by voluntarily petitioning court). The petitioner's lack of a biological connection to [the child] is therefore not fatal to his request for parental rights and responsibilities under RSA chapter 461-A, so long as he alleges sufficient facts to establish his status as a parent by other means.

Id.

In this case, the appellant is the biological father of the child at issue and was considered a "parent" for purposes of RSA chapter 461-A prior to 2012. In 2012, however, the appellant surrendered his parental rights to the child pursuant to RSA chapter 170-B. The term "surrender" is statutorily defined as "the release of all parental rights, including but not limited to care, custody, and control of the child, by a parent, legal guardian, or agency." RSA 170-B:2, XVII (2014). In this context, the word "custody" means "the allocation of parental rights and responsibilities as provided in [RSA chapter 461-A]." RSA 461-A:20. Upon the court's approval of the surrender, all of the appellant's parental rights ceased with respect to the child, except for certain inheritance rights and privileges that remained in effect until the court issued the final decree of adoption. RSA 170-B:11, I, :25, II (2014); see also In the Matter of Dufton & Shepard, 158 N.H. 784, 789 (2009) (recognizing that "generally, a natural parent has no parental rights to the child she relinquished"). We conclude, therefore, that when the appellant surrendered his parental rights to the child pursuant to RSA chapter 170-B, he also relinquished his status as a "parent" of that child for purposes of RSA chapter 461-A. Consequently, he now lacks standing to maintain a petition for parenting time with that child under RSA chapter 461-A.

The appellant urges us to focus on his post-surrender contact with the child, instead of on the surrender, which he claims he "is not challenging" in this appeal. He states that he "is asserting his ability under case law,"

specifically J.B. & J.G., "to establish new facts post-[s]urrender in order to establish 'parental status.'"  However, the petitioner in J.B. & J.G. did not surrender his parental rights; thus, that case does not support the appellant's contention that an individual who has surrendered his parental rights can re-establish his status as a "parent" under RSA chapter 461-A.  See J.B. & J.G., 157 N.H. at 578-81.

We further note that the appellant's assertion that he has "re-establish[ed]" the parental status he relinquished in 2012 amounts to a collateral attack on the surrender.  In effect, he seeks to undo the consequences of the surrender.  The legislature has expressly limited the time frame in which a parent can seek to withdraw his or her surrender or challenge the resulting adoption.  See RSA 170-B:12, V (2014) ("A surrender may not be withdrawn after the entry of the final decree of adoption for any reason."); RSA 170-B:21, I (2014) ("[N]o appeal shall be allowed from any order or decree involving proceedings for adoption unless taken within 30 days from receipt of such order or decree."); RSA 170-B:21, II (2014) ("Subject to the disposition of an appeal upon the expiration of one year after a final adoption decree is issued, the decree cannot be challenged by any person . . . in any manner upon any ground, including fraud, misrepresentation, failure to give any required notice, or lack of jurisdiction of the parties or of the subject matter.").  One of the purposes of these provisions is to "ensur[e]" the adoptive parent or parents "an undisturbed relationship with the child from and after the date of adoption."  RSA 170-B:1, III.  Allowing an individual to collaterally attack his or her surrender of parental rights would jeopardize the finality that RSA chapter 170-B seeks to achieve for adoptive parents and adopted children.  See Madelyn B., 166 N.H. at 459 ("[O]ur goal is to apply statutes in light of the legislature's intent in enacting them, and in light of the policy sought to be advanced by the entire statutory scheme." (quotation omitted)).

For these reasons, we hold that the appellant does not have standing to pursue his petitions for parenting time, and we affirm the dismissal of the petitions.

Affirmed.

LYNN, C.J., and HICKS, BASSETT, and DONOVAN, JJ., concurred.

5