IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 8, 2020 Session

## IN RE CLAIRE C.

**Appeal from the Juvenile Court for Warren County**
**No. 2017-JV-1232      William M. Locke, Judge**

_____

### No. M2019-00986-COA-R3-JV

_____

Paternal great uncle and great aunt of a minor child filed a petition under the grandparent visitation statute, Tenn. Code Ann. § 36-6-306, and the trial court dismissed the petition for lack of standing, finding that the petitioners did not meet the statutory definition of "grandparent." We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which RICHARD H. DINKINS, J., and J. STEVEN STAFFORD, P.J., W.S., joined.

Jeremy D. Trapp, Smithville, Tennessee, for the appellants, Jeffrey Scurlock and Debbie Scurlock.

Mary Melinda Pirtle, McMinnville, Tennessee, for the appellee, Erika Brooke Goodwin.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

Claire C., born in 2012, is the daughter of Erika Goodwin. Claire's father died in April 2013 when she was approximately five months old. Ms. Goodwin and Claire's father were never married. Jeffrey and Debbie Scurlock are Claire's paternal great uncle and great aunt.

In February 2018, the Scurlocks filed a petition for grandparent visitation in the trial court in which they alleged that they "enjoyed a good relationship" with Claire during the first five years of her life. According to the petition, Claire stayed at the Scurlocks' home "on weekends at least twice a month" and, beginning in 2014, these overnight visits occurred every weekend until about October 2017. The Scurlocks

asserted that Ms. Goodwin had prevented any further visitation between them and Claire since October 2017. They averred that they met the requirements of Tenn. Code Ann. § 36-6-306 for grandparent visitation. In the petition, the Scurlocks stated: "Petitioners would aver that though they are not the biological grandparents, that the minor child knows the petitioners as grandparents, petitioners have played the role of grandparents, and that Tennessee Law does not limit visitation to only biological grandparents."

After Ms. Goodwin filed an answer in opposition to the Scurlocks' petition for visitation, the case was set for hearing. After the hearing on June 6, 2018, the trial court dismissed the matter based upon a finding that the Scurlocks did not fall within the statutory definition of grandparents and therefore lacked standing to seek visitation. A final order in accordance with this ruling was entered on May 22, 2019.

STANDARD OF REVIEW

The issue of whether a party has standing presents a question of law. *Spears v. Weatherall*, 385 S.W.3d 547, 549 (Tenn. Ct. App. 2012). Statutory interpretation is likewise a question of law. *Id.* As to questions of law, our review is de novo with no presumption of correctness afforded to the trial court's decision. *Id.* If the party filing a petition for grandparent visitation lacks standing, the court does not have subject matter jurisdiction to hear the matter. *Id.*

ANALYSIS

Did the Scurlocks, the paternal great aunt and great uncle of the child at issue, have standing to bring a petition for grandparent visitation? The answer to this question turns upon the proper interpretation of Tenn. Code Ann. § 36-6-306(e), which defines the term "grandparent" for purposes of the grandparent visitation statute. This provision states:

> Notwithstanding any law to the contrary, as used in this part, with regard to the petitioned child, the word "grandparent" *includes, but is not limited to*:
>
> (1) A biological grandparent;
> (2) The spouse of a biological grandparent;
> (3) A parent of an adoptive parent; or
> (4) A biological or adoptive great-grandparent or the spouse thereof.

Tenn. Code Ann. § 36-6-306(e) (emphasis added). The Scurlocks emphasize the italicized phrase—"includes, but is not limited to"—and argue that they have acted in the role of grandparents and, therefore, should be considered to fall within the definition of "grandparent."

In order to determine the proper interpretation of Tenn. Code Ann. § 36-6-306(e), we will review some history and context. In *Hawk v. Hawk*, 855 S.W.2d 573 (Tenn. 1993), the Tennessee Supreme Court reviewed the constitutionality of a prior version of the grandparent visitation statute. At that time, Tenn. Code Ann. § 36-6-301 allowed a court to order "reasonable visitation" for a grandparent if the court determined that such visitation was "in the best interests of the minor child." *Hawk*, 855 S.W.2d at 576. The trial court did not find the parents unfit, but rejected the validity of their objections to the paternal grandparents' visitation and "ordered visitation for two full weekends in odd months, one weekend in even months, two weeks in the summer, and Thanksgiving and Christmas afternoons." *Id.* at 577. The court of appeals agreed. *Id.* at 575.

On appeal, the Court examined the constitutionality of the grandparent visitation statute under Article I, Section 8 of the Tennessee Constitution. *Id.* at 577. The Court determined that "parental rights constitute a fundamental liberty interest under Article I, Section 8 of the Tennessee Constitution." *Id.* at 579. Citing *Davis v. Davis*, 842 S.W.2d 588, 601 (Tenn. 1992), the Court concluded that the right to privacy "fully protects the right of parents to care for their children without unwarranted state intervention." *Hawk*, 855 S.W.2d at 579. The Court further found that, "without a substantial danger of harm to the child, a court may not constitutionally impose its own subjective notions of the 'best interests of the child' when an intact, nuclear family with fit, married parents is involved." *Id.* By requiring an initial finding of harm to the child before allowing the state to intervene to determine the child's best interests, the Court sought to "prevent judicial second-guessing of parental decisions." *Id.* at 581. In explaining the reasoning behind its decision, the Court stated:

> By applying this type of analysis, we also seek to avoid the "unquestioning judicial assumption" that grandparent-grandchild relationships always benefit children, an assumption that overlooks the necessity of a threshold finding of harm *before* the state can intervene in the parent-child relationship. For example, in *In re Robert D.*, 151 Cal. App. 3d 391, 396-7, 198 Cal. Rptr. 801, 803-4 (1984), the California court gave nominal weight to the "right to parent [which] can only give way upon a clear and convincing showing of parental unfitness and detriment to the child," but then balanced this right against grandparent visitation which the court assumed was "beneficial for the child's development." Accepting a counselor's recommendation of grandparent visitation, the court disregarded the parents' concerns. *Id. Robert D.* illustrates how easily a court can deprive parents of fundamental rights when it contemplates the benefits of a grandparent-grandchild relationship, or any other perceived benefit, before assessing the need for state interference.

*Id.* at 581 (footnote omitted). Applying this analysis to the Tennessee statute, the Court found that Tenn. Code Ann. § 36-6-301 violated Article I, Section 8 of the Tennessee

Constitution "[w]hen applied to married parents who have maintained continuous custody of their children and have acted as fit parents." *Id.* at 582.

The United States Supreme Court addressed grandparent visitation in *Troxel v. Granville*, 530 U.S. 57 (2000), a case involving a Washington statute. Tommie Granville and Brad Troxel had two daughters and never married; they separated in 1991, and Brad died in 1993. *Troxel*, 530 U.S. at 60. In December 1993, Jenifer and Gary Troxel, Brad's parents, filed a petition seeking the right to visit their grandchildren over the opposition of Ms. Granville, who requested that their visitation be limited to one day a month with no overnight visitation. *Id.* at 61. Section 26.10.160(3) (1994) of the Revised Code of Washington provided: "Any person may petition the court for visitation rights at any time including, but not limited to, custody proceedings." *Id.* The statute authorized the court to grant visitation whenever it "'may serve the best interest of the child.'" *Id.* (quoting Wash. Rev. Code § 26.10.160(3)).

The Washington Superior Court found that visitation with their grandparents was in the children's best interest and entered a decree "ordering visitation one weekend per month, one week during the summer, and four hours on both of the petitioning grandparents' birthdays." *Id.* The Washington Court of Appeals reversed the Superior Court's visitation order and dismissed the grandparents' petition, "holding that nonparents lack standing to seek visitation under § 26.10.160(3) unless a custody action is pending." *Id.* at 62. The court of appeals took the view that this interpretation was consistent with the constitutional limitations required by "'parents' fundamental liberty interest in the care, custody, and management of their children.'" *Id.* (quoting *In re Troxel*, 940 P.2d 698, 700 (Wash. Ct. App. 1997)). The Washington Supreme Court agreed with the result reached by the court of appeals, but disagreed with its statutory interpretation because the plain language of § 26.10.160(3) gave the Troxels standing regardless of whether a custody action was pending. *Id.* The Court held that the statute violated parents' fundamental right to rear their children by failing to require a threshold showing of harm and by sweeping too broadly in allowing "any person" to petition for visitation at "any time" with only a showing of best interest. *Id.* at 63.

The United States Supreme Court acknowledged the demographic changes contributing to the important role grandparents play in many families and the "nationwide enactment of nonparental visitation statutes," which the Court viewed as being, at least in part, a "recognition of these changing realities of the American family." *Id.* at 63-64. The Court further acknowledged that "the State's recognition of an independent third-party interest in a child can place a substantial burden on the traditional parent-child relationship." *Id.* at 64. In the words of the Court, "[t]he liberty interest at issue in this case—the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court." *Id.* at 65. This right, the Court found, undoubtedly includes a parent's right to make decisions about the care, custody, and control of his or her children. *Id.* at 66.

The Court concluded that § 26.10.160(3), as applied to Ms. Granville, infringed upon her fundamental constitutional rights as a parent. *Id.* at 67. In particular, the Court noted that the Troxels had not alleged, and no court had found, that Ms. Granville was not a fit parent. *Id.* at 68. The Superior Court failed to apply a presumption in favor of the parent's determination of her child's best interest and, in fact, appeared to apply a presumption in favor of allowing grandparent visitation. *Id.* at 69. In so doing, the trial court "failed to provide any protection for Granville's fundamental constitutional right to make decisions concerning the rearing of her own daughters." *Id.* at 69-70. The Court further emphasized that Ms. Granville never completely cut off visitation and found it significant that "many other States expressly provide by statute that courts may not award visitation unless a parent has denied (or unreasonably denied) visitation to the concerned third party." *Id.* at 71.

The Supreme Court also made note of the two "slender findings" made by the Superior Court to justify its decision in favor of visitation. *Id.* at 72. First, the Superior Court found that the Troxels "are part of a large, central, loving family, all located in this area, and . . . can provide opportunities for the children in the areas of cousins and music." *Id.* Second, it found that "[t]he children would be benefitted from spending quality time with the [Troxels], provided that that time is balanced with time with the [children's] nuclear family." *Id.* The Supreme Court concluded:

> These slender findings, in combination with the court's announced presumption in favor of grandparent visitation and its failure to accord significant weight to Granville's already having offered meaningful visitation to the Troxels, show that this case involves nothing more than a simple disagreement between the Washington Superior Court and Granville concerning her children's best interests. The Superior Court's announced reason for ordering one week of visitation in the summer demonstrates our conclusion well: "I look back on some personal experiences . . . . We always spen[t] as kids a week with one set of grandparents and another set of grandparents, [and] it happened to work out in our family that [it] turned out to be an enjoyable experience. Maybe that can, in this family, if that is how it works out." As we have explained, the Due Process Clause does not permit a State to infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a "better" decision could be made. Neither the Washington nonparental visitation statute generally—which places no limits on either the persons who may petition for visitation or the circumstances in which such a petition may be granted—nor the Superior Court in this specific case required anything more.

*Id.* at 72-73 (citation to record omitted). Therefore, the Court held that § 26.10.160(3), as applied to the facts of the case, was unconstitutional.

- 5 -

Shortly after the United States Supreme Court issued its decision in *Troxel*, Tennessee amended its grandparent visitation statute to require, among other things, a threshold finding of substantial harm. *See* 2000 TENN. PUB. ACTS ch. 891. In 2004, the General Assembly added subsection (e) to Tenn. Code Ann. § 36-6-306, defining the term "grandparent" as follows:

> Notwithstanding any provision of law to the contrary, as used in this section and in § 36-6-307, with regard to the petitioned child, the word "grandparent" includes but is not limited to:
>
> (1) A biological grandparent,
> (2) The spouse of a biological grandparent, or
> (3) A parent of an adoptive parent.

*See* 2004 TENN. PUB. ACTS ch. 691.[1] Subsection (e) was amended again in 2015 to add the final definition in the list—"A biological or adoptive great-grandparent or the spouse thereof." *See* 2015 TENN. PUB. ACTS ch. 247. The latter amendment brought the statute into express conformity with the result reached by the court in *In re Dayton R.*, No. W2014-01904-COA-R3-JV, 2015 WL 1828039, at *4 (Tenn. Ct. App. Apr. 21, 2015) (holding that biological great-grandparents had standing to seek visitation under Tenn. Code Ann. § 36-6-306(e)(1)).

As this court discussed in *In re Dayton R.*, 2015 WL 1828039, at *1, "the nature of grandparent visitation statutes varies significantly from state to state." In that case, we outlined the various ways in which state statutes defined the term "grandparent" and whether they expressly included or excluded great-grandparents. *In re Dayton R.*, 2015 WL 1828039, at *1-2. Some state statutes address the inclusion or exclusion of step-grandparents or the effect of adoption. *See, e.g.,* Ind. Code Ann. § 31-9-2-77; Mich. Comp. Laws Ann. § 722.27b. No state statutory definition of grandparent includes relatives other than grandparents or great-grandparents.

There is a group of more expansive state statutes allowing visitation for grandparents as well as other persons. An example of this type of broad statutory framework is the statute in Oregon, Or. Rev. Stat. Ann. § 109.119(1), which provides, in part:

> Except as otherwise provided in subsection (9) of this section, *any person*, including but not limited to a related or nonrelated foster parent, stepparent,

---

[1] In conjunction with its passage of this new provision, the General Assembly rejected language that would have included "[a] stepparent's parent" within the definition of grandparent. *See* Senate Debate, Senate Bill 2681, Feb. 25, 2004 (Senate Tape 17) (remarks of Sen. Haynes), and House Debate, House Bill 3121, May 3, 2004 (House Tape 66) (remarks of Rep. Deberry), 103rd General Assembly.

grandparent[2] or relative by blood or marriage, *who has established* emotional ties creating a child-parent relationship or *an ongoing personal relationship* with a child may petition or file a motion for intervention with the court having jurisdiction over the custody, placement or guardianship of that child, or if no such proceedings are pending, *may petition the court* for the county in which the child resides, for an order providing *for relief* under subsection (3) of this section.

(emphasis added). This subsection allows any person with "an ongoing personal relationship with a child" to petition for visitation under subsection (3). Or. Rev. Stat. Ann. § 109.119(1). Under Or. Rev. Stat. Ann. § 109.119(10)(e), an "[o]ngoing personal relationship" is defined as "a relationship with substantial continuity for at least one year, through interaction, companionship, interplay and mutuality." Subsection (2) provides that "there is a presumption that the legal parent acts in the best interest of the child." Or. Rev. Stat. Ann. § 109.119(2)(a). If, however, "the court determines that an ongoing personal relationship exists and . . . that the presumption . . . has been rebutted by clear and convincing evidence, the court shall grant visitation or contact rights to the person having the ongoing personal relationship, if to do so is in the best interest of the child." Or. Rev. Stat. Ann. § 109.119(3)(b). The statute provides a list of non-exclusive factors for the court to consider in deciding whether the presumption has been rebutted and whether to award visitation. Or. Rev. Stat. Ann. § 109.119(4)(a). The factors include whether "[c]ircumstances detrimental to the child exist if relief is denied," and whether "[g]ranting relief would not substantially interfere with the custodial relationship." *Id.*

The Tennessee General Assembly has not enacted a broad statutory framework similar to those in Oregon, Ohio, and Virginia. *See* Ohio Rev. Code Ann. § 3109.051(B), 3109.11; Va. Code Ann. § 20-124.2. As stated by this court in *In re Dayton R.*, 2015 WL 1828039, at *2, "Tennessee's grandparent visitation statute is unique." Tennessee Code Annotated § 36-6-306(e) provides "guidance with regard to the term 'grandparent.'" *In re Dayton R.*, 1828039, at *2. This subsection states that the term "grandparent" "includes, but is not limited to" a list of four examples. Tenn. Code Ann. § 36-6-306(e).

Several Tennessee cases have addressed the specific question of how to interpret Tenn. Code Ann. § 36-6-306(e) and its "includes, but is not limited to" language. In *Spears v. Weatherall*, 385 S.W.3d at 548, the court addressed the application of Tenn. Code Ann. § 36-6-306(e) to the former stepfather of the mother of the child at issue. Wendy Weatherall was the mother of a minor child, and Bobby Spears was married to Ms. Weatherall's mother for approximately 25 years. *Spears*, 385 S.W.3d at 548. Mr. Spears was "actively involved in [the child's] life as his step-grandfather," often picking him up from daycare or school. *Id.* Ms. Weatherall and the child lived with Mr. Spears

---

[2] Or. Rev. Stat. Ann. § 109.119(10)(c) defines "[g]randparent" as "the legal parent of the child's legal parent."

and Ms. Weatherall's mother for extended periods. *Id.* After Ms. Weatherall's mother and Mr. Spears divorced in November 2009, Mr. Spears continued to see the child on a regular basis. *Id.* Ms. Weatherall started to "severely limit" Mr. Spears's contact with the child in July 2010, and Mr. Spears filed a petition for grandparent visitation in November 2010. *Id.*

The trial court dismissed Mr. Spears's petition, ruling that he lacked standing because he did not fall within the statutory definition of a "grandparent." *Id.* at 549. This court agreed. Finding Tenn. Code Ann. § 36-6-306(e) to be "clear and unambiguous," we quoted with approval from Judge Kirby's concurrence in *Lovlace v. Copley*, M2011-00170-COA-R3-CV, 2012 WL 368221 (Tenn. Ct. App. Feb. 3, 2012).[3] *Id.* at 550. Judge Kirby emphasized the importance of narrowly construing grandparent visitation statutes, even those with "includes, but is not limited to" language:

> "Grandparent visitation statutes must be narrowly construed in order to comport with the state and federal constitutions, because they are in derogation of the parents' fundamental constitutional rights. *See, e.g., In Matter of Rupa,* 161 N.H. 311, 317, 13 A.3d 307 (2010). Thus, while the language in Tennessee's statute permits the court to verge slightly beyond the three enumerated subsections defining 'grandparent,' the Constitution requires us to do so with great prudence.
> . . . .
>
> [N]owhere in the statutory definition of grandparent is there any language indicating that the quality of the relationship is considered in determining whether the petitioners meet the statutory definition. Rather, the structure and language of the statute as a whole show clearly that the court is to first determine whether the petitioners are 'grandparents' within the statutory definition. If the court finds that the petitioners do not fit within the statutory definition of 'grandparent,' the inquiry goes no further. Only if the court finds that the petitioners are 'grandparents' does the court go on to determine 'the presence of a danger of substantial harm to the child,' explicitly considering whether the child had a 'significant existing relationship' with the petitioning grandparents."

*Spears*, 385 S.W.3d at 550–51 (quoting *Lovlace*, 2012 WL 368221, at *21-22).

Applying this reasoning, this court concluded that Mr. Spears was not a grandparent within the meaning of Tenn. Code Ann. § 36-6-306(e):

---

[3] At the time of the *Spears* decision, *Lovlace v. Copley* was on appeal to the Tennessee Supreme Court. We will discuss the Supreme Court's decision below. The Supreme Court agreed with the decision of the Court of Appeals on the issue of standing. *Lovlace v. Copley*, 418 S.W.3d 1, 19 (Tenn. 2013).

Unlike the individuals in *Lovlace,* we find no support for an interpretation that would give a former step-grandparent standing to file a petition for grandparent visitation under the statute. While we are mindful of the relationship between Mr. Spears and his former step-grandchild, any consideration of this relationship in our determination of standing would be "at odds with the language and structure of the grandparent visitation statute," and would be "clearly contrary to the Court's obligation to respect the parents' constitutional right to raise their child as they see fit." *Id.* at *21–22; *see also Troxel v. Granville,* 530 U.S. 57, 66, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000); *Hawk v. Hawk,* 855 S.W.2d 573, 577-79 (Tenn. 1993). Accordingly, we find no error in the trial court's dismissal of Mr. Spears' petition for grandparent visitation.

*Id.* at 551.

The case of *Lovlace v. Copley*, referenced above, was ultimately decided by the Tennessee Supreme Court in 2013. *See Lovlace v. Copley*, 418 S.W.3d 1 (Tenn. 2013). That case involved the modification of court-ordered grandparent visitation and the applicable standards and burdens of proof in such cases. *Id.* at 7. For present purposes, we concern ourselves only with the Court's discussion of standing. The petitioners in *Lovlace*, the Lovlaces, were the child's adoptive paternal grandmother and her husband. *Id.* at 17-18. Like the court of appeals, the Supreme Court concluded that the statutory definition of "grandparent" included the Lovlaces. *Id.* at 18. The Court found the statute unambiguous and interpreted "its use of the phrase 'includes, but is not limited to,' in conjunction with three categories of persons who qualify as a 'grandparent,' [to] clearly evince[ ] the Legislature's intent *not* to limit the statutory definition of 'grandparent' to only the three listed categories." *Id.* The Court characterized such phrases as "terms of enlargement, not of restriction." *Id.* Noting that the statute "includes two categories that do not require proof of a biological relationship with the child," the Court concluded that an adoptive parent of the minor child's biological father (like Mrs. Lovlace) and the stepparent of that child's biological father (like Mr. Lovlace) "qualify as 'grandparents' under the expansive definition of the term" used in the statute. *Id.*

In a footnote to its analysis on standing, the Court in *Lovlace* adopted similar reasoning to that expressed by Judge Kirby in the court of appeals opinion:

In reaching this holding, we have not considered the extent or quality of the Lovlaces' relationship with the minor child, as this is not a relevant consideration in determining whether a petitioner satisfies the statutory definition of "grandparent." Tenn. Code Ann. § 36-6-306(e). This consideration becomes relevant to determining substantial harm and the best interests of the child only after a petitioner has established standing by satisfying the statutory definition of "grandparent." *Id.*

*Lovlace*, 418 S.W.3d at 19 n.7. Thus, the Court stated that the quality and extent of a petitioner's relationship with the child should not be considered in the determination of whether he or she meets the statutory definition of a grandparent.

Finally, we consider this court's analysis in *In re Dayton R.*, 2015 WL 1828039, at *1, a case in which the petition for visitation was brought by great-grandparents. After discussing statutory provisions from other states and case law from Tennessee construing Tenn. Code Ann. § 36-6-306(e), this court concluded that "the Tennessee General Assembly did not intend to enact the type of grandparent visitation statute that would grant standing to only four grandparents." *In re Dayton R.*, 2015 WL 1828039, at *1-4. We noted that the statute contained three categories of persons who qualified as grandparents (and the statute was subsequently amended to add a fourth category) and that the statute also included language stating that the term "grandparents" was not limited to the enumerated categories. *Id.* at *4. The court then made the following statement:

> Rather, the Legislature's wording in Section 36-6-306(e)(1) indicates an intent to provide standing to *lineal ancestors*, or grandparents who are biologically related to the child.

*Id.* (emphasis added). Because the great-grandparents qualified as lineal ancestors, the court found that they qualified as "grandparents" under the statute. *Id.*

Ms. Goodwin argues that *In re Dayton R.* interprets Tenn. Code Ann. § 36-6-306(e)(1) as giving standing to lineal ancestors[4] or biological grandparents only. The Scurlocks argue that the provision should be interpreted more broadly and that "the relationship between and child and the one petitioning for grandparent visitation should be a factor in determining whether that person is a grandparent for purposes of grandparent visitation." As discussed above, grandparent visitation statutes must be narrowly construed to protect the fundamental parental liberty interest at stake. Our Supreme Court has expressly rejected the examination of the "extent or quality" of a petitioner's relationship with the child when determining whether he or she qualifies as a "grandparent" under the statute. *Lovlace*, 418 S.W.3d at 19 n.7. Thus, the statute does not authorize a court to determine that a petitioner qualifies as a "de facto grandparent" based upon his or her relationship with a child. This court, therefore, affirms the trial court's determination that the Scurlocks do not qualify as grandparents under Tenn. Code Ann. § 36-6-306.

---

[4] *Black's Law Dictionary* defines a "lineal ascendant" as a "blood relative in the direct line of ascent; ancestor. Parents, grandparents, and great-grandparents are lineal ascendants." BLACK'S LAW DICTIONARY (11th ed. 2019). We note that Tenn. Code Ann. § 36-6-306(e)(2) expands the definition beyond blood relatives but retains the lineal nature of the relationship.

CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellants, Jeffrey Scurlock and Debbie Scurlock, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE